Appeal of HAMILTON & CHAMBERS      Docket No. 131.
CO., INC.

Evidence *held* sufficient to support the taxpayer's claim that two corporations were, during the year 1919, affiliated within the meaning of section 240 of the Revenue Act of 1918.

Submitted January 24, 1925; decided February 28, 1925.

*George H. Mitchell, Esq.*, for the taxpayer.

*P. S. Crewe, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

At the hearing of this appeal Hermann Fougner was sworn and testified for the taxpayer, and there was introduced as documentary evidence an audit of the business accounts of the taxpayer and its associated companies for the calendar year 1919, certified by a firm of public accountants. In addition, several extracts from the minute records of directors' meetings were read into the record. On behalf of the Commissioner, there were introduced a letter addressed to the Commissioner by the taxpayer, dated October 4, 1921; an affiliated corporations questionnaire (Internal Revenue Bureau Form 819), furnished by the taxpayer under date of March 11, 1920; and the Commissioner's deficiency letter dated July 7, 1924. From the foregoing the Board makes the following

FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of the State of New York and is engaged in the business of steel construction, having an authorized capital of 1,500 shares of stock of a par value of $100 each. It had been engaged in business for a number of years prior to 1919, and was during all of that year associated with two other corporations known as the Hamilton-Beers Corporation and Hamilton & Chambers Co. of West Indies, Inc., the latter organized under the laws of the State of Delaware. All three of these corporations were engaged in similar or related businesses.

In the spring of 1919 Hermann Fougner, then having only a limited quantity of capital and being unattached to any business enterprise, was seeking an opportunity of engaging in the business of dealing and contracting in the steel used in reinforcing concrete buildings. He had had, prior to that time, some years of experience in this business.

In the quest of his purpose, he sought the advice and the cooperation of John W. Hamilton, president of the taxpayer corporation, with whom he had been acquainted for a number of years. He had several conversations and discussions of the steel contracting business with Hamilton, and such conversations resulted in an invitation extended by John W. Hamilton to join the organization of the Hamilton & Chambers Co. In carrying out this plan it was proposed

that Fougner use such capital as he could command in purchasing stock of the Hamilton & Chambers Co.; that the Hamilton & Chambers Co. would cause to be organized and financed a new corporation, to be especially engaged in dealing in reinforcing steel, and that the Hamilton & Chambers Co. would add that new line of activity to its system.

On or about July 25, 1919, Fougner purchased 75 shares of the capital stock of the Hamilton & Chambers Co., and between that date and August 19, 1919, the Fougner Concrete Steel Co. was organized as a corporation under the laws of the State of New York, with an authorized capital stock of 100 shares of no par value, and the Hamilton & Chambers Co. paid into the treasury of the Fougner Concrete Steel Co. the sum of $500, that being the minimum amount with which a corporation was allowed to begin business under the statutes of the State of New York. On or about August 5, 1919, the Hamilton & Chambers Co. caused 30 shares of the no par value stock of the Fougner Concrete Steel Co. to be issued or assigned to Hermann Fougner. Further carrying out these plans, Fougner was elected a member of the board of directors of the Hamilton & Chambers Co., and also vice president of that company. John W. Hamilton, president of the Hamilton & Chambers Co., became vice president of the Fougner Concrete Steel Co. The other officers and directors of the two companies were all identical. The management and accounting of the Fougner Concrete Steel Co. were carried on in the same suite of offices occupied by the Hamilton & Chambers Co., and the storage and distribution of materials handled by the Fougner Concrete Steel Co. were all done in the same yard owned and operated by the Hamilton & Chambers Co. Throughout the year 1919 the stock of the Fougner Concrete Steel Co. was held and owned as follows:

|  | Shares |
|---|---|
| Hamilton & Chambers Co. | 70 |
| Hermann Fougner | 30 |

The Fougner Company, having no capital, except $500, obtained credit through the Hamilton & Chambers Co. For the original working capital the Hamilton & Chambers Co. loaned the Fougner Company $30,000, and the rest of the financing of the Fougner Company was done on the Hamilton & Chambers Co.'s guarantees of the purchases in such sums and amounts as were found necessary. The balance sheet at the close of the year 1919 showed guaranteed accounts payable in the sum of $72,800, and the Hamilton & Chambers Co. frequently indorsed notes for the Fougner Company for the purpose of obtaining bank loans. Fougner was paid a salary by both companies; $10,000 per year by the Fougner Company and $2,500 a year by the Hamilton & Chambers Co. Whenever Hamilton was ill or otherwise absent from the companies' offices, Fougner acted as chief executive officer for both companies.

Parts of the minutes of meetings of the board of directors of the Hamilton & Chambers Co. read into the record are as follows:

Meeting of July 15, 1919:

Mr. John W. Thomas offered to resign as Vice President and the President instructed him to invite Mr. Hermann Fougner to take the office as well as to

become a director in our company, which brought on the discussion of the proposition of organizing the Fougner Concrete Steel Company.

After a complete discussion, the President was authorized to organize such a company, inviting at the same time Mr. Fougner to become Vice President of the Hamilton & Chambers Company, with the understanding he would buy into our company 100 shares of stock and that, at the same time. an adjustment should be made as to his holdings in the Fougner Concrete Steel Company, which company is to be formed on a non par value basis.

Meeting of July 24, 1919, contains a letter from John W. Thomas, then vice president of the Hamilton & Chambers Co., addressed to the board of directors, as follows:

Gentlemen: I beg to submit my resignation as vice president of your corporation.

I am taking this action wholly in the interests of the corporation in order that the position may be open to our new associate, Mr. Hermann Fougner, who, I believe, will be in position to serve the interests of the corporation with all his knowledge.

Meeting of August 6, 1919:

Resolved, that in consideration of Mr. Fougner's coming into the company and acting as vice president and agreeing to act as president of the Fougner Concrete Steel Company, to issue to him 30 shares of the Fougner Company stock, and the Secretary is authorized to notify the secretary of the Fougner Concrete Steel Company to issue 30 out of the 100 shares to which it is entitled to Mr. Fougner.

Meeting of September 9, 1919:

The question of accountancy for the various companies under the control of the Hamilton & Chambers Company was then taken up and Mr. Hamilton stated that it was his idea to get some one to coordinate the accounts of all the companies.

For the purpose of complying with the requirements of the Revenue Act of 1918, the Hamilton & Chambers Co. caused to be made, for the year 1919, a consolidated income and profits tax return for itself and all of its associated companies, including the Fougner Concrete Steel Co. The Commissioner, in auditing such return, eliminated from the consolidated report the account of the Fougner Concrete Steel Co., and thereupon found a deficiency in tax in the sum of $3,029.85, and from such determination this appeal was taken.

### DECISION.

The Fougner Concrete Steel Co. was, during the year 1919, affiliated with the Hamilton & Chambers Co. and its other associated companies, within the meaning of section 240 of the Revenue Act of 1918, and the deficiency in tax, if any, should be recomputed in accordance with the following opinion. Final decision will be settled on consent or on 10 days' notice in accordance with Rule 50.

### OPINION.

TRUSSELL: The one issue requiring consideration in the determination of this appeal is whether, during that portion of the year 1919 following its organization, the Fougner Concrete Steel Co. was affiliated with the Hamilton & Chambers Co. within the meaning and purpose of section 240 of the Revenue Act of 1918.

The principal actors in the transactions which brought about the situation involved in this appeal were John W. Hamilton, then president of the Hamilton & Chambers Co., and Hermann Fougner. Hamilton died in the spring of 1924. Fougner was present at the hearing and testified concerning his conversations and negotiations with Hamilton.

These negotiations resulted in the determination of Hamilton & Chambers Co. to extend the field of its business activities by the addition of a new unit and the taking of Fougner into the organization as a new associate. The evidence establishes that thereafter, throughout the year 1919, all the business of the Hamilton & Chambers Co. and all its associated corporations, including the Fougner Concrete Steel Co., were conducted and managed as a single business enterprise; that when Fougner entered this organization he entered it upon substantially the same basis and with the same relationships as had previously obtained among its other stockholders; that he was just as much a part of one unified system of organization as were the other stockholders; that his interest in the entire group of enterprises differed in no essential respect from the interests of other stockholders, and that in his separate ownership of 30 shares of the stock of the Fougner Concrete Steel Co. he was, and continued through the year 1919 to be, in the position and relation of a "closely affiliated interest" through which the taxpayer controlled all of that portion of the stock of the Fougner Company not directly owned by it.

We believe the record of this appeal shows a situation which must lead irresistibly to the conclusion that the relations existing between the taxpayer and the Fougner Concrete Steel Co. were such as were intended to be described and defined in section 240 of the Revenue Act of 1918, and, therefore, that the accounts of the Fougner Concrete Steel Co. must be restored to the consolidated income and profits tax return as claimed by the taxpayer, and that the deficiency in tax found by the Commissioner must be disallowed.